56 F.3d 1531
 312 U.S.App.D.C. 461
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
SACRAMENTO RSA LIMITED PARTNERSHIP, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellees.
 No. 94-1532.
 United States Court of Appeals, District of Columbia Circuit.
 May 30, 1995.
 
 FCC
 AFFIRMED.
 Before: EDWARDS, Chief Judge; ROGERS and TATEL, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal was considered on the record from the Federal Communications Commission and on the briefs and oral argument of the parties. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir. Rule 36(b). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED that the decision of the Federal Communications Commission be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 41.
 
 MEMORANDUM
 
 4
 Sacramento RSA Limited Partnership ("Sacramento") challenges the Commission's dismissal of its cellular license application after the application was selected in a random lottery.[1] The Commission determined that the partnership's application violated Sec. 310(b)(3) of the Communications Act of 1934 because, at the time it filed the application, Sacramento had an alien limited partner who was not fully insulated from the partnership's management or business operations. Continental Cellular, 6 F.C.C.R. 6834 (1991), on reconsideration, Sacramento RSA Limited Partnership, 9 F.C.C.R. 3182 (1994). The Commission also found unconvincing Sacramento's post-filing submissions indicating that its alien limited partner did not participate in controlling the partnership's business affairs. Sacramento RSA, 9 F.C.C.R. at 3185. In its petition for review, Sacramento primarily contends that the Commission erroneously rejected its application based on potential rather than actual control by the alien partner. Because the Commission's reasons for rejecting Sacramento's application are consistent with Commission precedent and prior decisions of the court, we deny the petition for review. See Ponchartrain Broadcasting Co. v. FCC, 15 F.3d 183, 185 (D.C.Cir.1994).
 
 I.
 
 5
 Section 310(b)(3) of the Communications Act prohibits the award of any radio license to "any corporation of which any officer or director is an alien." In In re Request for Declaratory Ruling Concerning the Citizenship Requirements of Sections 310(b)(3) and (4) of the Communications Act of 1934, as amended, 103 F.C.C.2d 511 (1985) ("Wilner & Scheiner "), the Commission held that because "Congress intended that aliens be prohibited entirely from holding ... high level management positions" in radio licensees, Sec. 310(b)(3) also bars awarding permits to partnerships with an alien partner that has "powers comparable to those of an officer or director" of a corporation. Id. at 520 n. 43. Because some "limited partners may have the capability to exercise substantial control over business affairs," limited partnerships, as well as general partnerships, fall within the exclusion. Id. The Commission indicated, however, that the rule only barred aliens from becoming limited partners "[i]f a limited partnership interest conveys powers comparable to those held by an officer or director of a corporation." Id. Moreover, "[a]lthough the licensee has the burden of proving that alien limited partners do not in fact substantially participate in the management or operations of the business," the Commission stated that it would allow applicants flexibility in meeting their burden. Id. Finally, the Commission borrowed the criteria from its attribution guidelines, developed in the context of the media cross-ownership rule, as a "safe harbor" exception, indicating that "alien partners who conform to these criteria will not be subject to the restrictions governing alien officers and directors." Id. (citing Reexamination of the Commission's Rules and Policies Regarding the Attribution of Ownership Interests in Broadcast, Cable Television and Newspaper Entities, 50 Fed.Reg. 27,438 (1985) ("Attribution Reconsideration Order ")).
 
 
 6
 Following selection of Sacramento's cellular license application, the Commission conducted its customary review of Sacramento's qualifications. See generally Moving Phones Partnership L.P. v. FCC, 998 F.2d 1051, 1053-54, 1057 (D.C.Cir.1993); see also Florida Cellular Mobil Communications Corp. v. FCC, 28 F.3d 191, 193 (D.C.Cir.1994). Upon learning that Sacramento had an alien limited partner, the Commission sought further information on Sacramento's compliance with Sec. 310(b)(3) because "the limited partnership agreement does not appear to insulate the alien limited partner from becoming involved in the management and operations of the partnership as required by Commission precedent." Sacramento submitted an irrevocable voting proxy, dated after the Commission's letter of inquiry, in which the alien partner transferred his voting rights to another partner, as well as two affidavits indicating that the alien partner had not participated in the partnership's affairs. The Commission rejected the proxy as a post-filing curative amendment and found that the affidavits failed to establish that the alien partner was adequately insulated from the partnership's management to meet the Wilner & Scheiner test. Sacramento RSA, 9 F.C.C.R. at 3185. Accordingly, the Commission dismissed Sacramento's application. Continental Cellular, 6 F.C.C.R. 6834, on reconsideration, Sacramento RSA, 9 F.C.C.R. 3182.
 
 II.
 
 7
 Sacramento raises four arguments on appeal, only one of which merits more than cursory discussion. First, its claim that the Commission erroneously converted the "safe harbor" attribution guidelines into a mandatory requirement fails because the Commission's decision on reconsideration considered alternative methods of insulation and expressly stated that the attribution guidelines are non-exclusive. Sacramento RSA, 9 F.C.C.R. at 3184-85 & n. 18. Second, Sacramento's challenge to the rejection of the irrevocable proxy also fails because the Commission has put lottery applicants on notice "that they ha[ve] to possess the qualifications to be a licensee on the day of filing, that one such qualification was compliance with section 310(b), and that no curative amendments would be accepted for noncomplying applications." Moving Phones, 998 F.2d at 1057; see Lottery Further Reconsideration Order, 59 R.R.2d 381, 410 & n. 17 (1985); 47 C.F.R. Sec. 22.918(b) (1994); REM Communication, 3 F.C.C.R. 3705, 3705 (1988). Third, neither the definition of limited partnerships under state and federal securities laws nor similarities between the role of limited partners and corporate shareholders make the Commission's application of Sec. 310(b)(3) to limited partnerships an impermissible interpretation of the Communications Act, see Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842-43 (1984), in light of the unique objectives of Sec. 310(b)(3) and the fact that limited partners often have greater ability than shareholders to influence the management of their business organization. See, e.g., Continental Cellular, 6 F.C.C.R. at 6837.
 
 
 8
 Sacramento also contends that the Commission rejected its application based on a mistaken interpretation of Wilner & Scheiner. Seizing on a single sentence in Wilner & Scheiner, Sacramento maintains that a limited partnership complies with Sec. 310(b)(3) so long as its alien limited partner does not in fact participate in controlling the partnership's affairs, and that the Commission erred by dismissing Sacramento's application based on the alien partner's potential to control those affairs. The Commission acknowledges that it dismissed Sacramento's application based on the limited partner's potential to control the business, but it maintains that this action is consistent with Wilner & Scheiner.
 
 
 9
 Despite one sentence suggesting that Sec. 310(b)(3) applies only to limited partners who "in fact substantially participate" in the partnership's affairs, the Wilner & Scheiner test fairly reflects a potential control standard.[2] See United States v. Merlos, 984 F.2d 1239, 1242 (D.C.Cir.1993); see also In re Iwahashi, 888 F.2d 1370, 1375 (Fed.Cir.1989); Craft v. Wipf, 836 F.2d 412, 416-17 (8th Cir.1987). The Commission's repeated reference to the "powers" of limited partners, and its statement that Sec. 310(b)'s prohibitions apply if the limited partnership interest "conveys powers comparable to those held by an officer or director of a corporation," indicate that the possibility of control by an alien is sufficient to violate Sec. 310(b)(3).
 
 
 10
 Wilner & Scheiner' § incorporation of the attribution rules (albeit as a safe harbor) further indicates that the Wilner & Scheiner test protects against potential future control rather than actual past participation. The attribution rules focus on whether limited partners have the right to participate in controlling the partnership's affairs, rather than whether they have exercised that right. In establishing its initial attribution rules, the Commission noted the necessity "to verify appropriate insulation of the general partner from any possibility of control or influence by the limited partners." Reexamination of the Commission's Rules and Policies Regarding the Attribution of Ownership Interests in Broadcast, Cable Television and Newspaper Entities, 97 F.C.C.2d 997, 1022 (1984) (emphasis added). On reconsideration, the Commission substantially revised the rules and reiterated the need to protect against "the possibility of influence or control that would warrant attribution of the limited partner." Attribution Reconsideration Order, 59 Fed.Reg. at 27445; see id. (noting that attribution guidelines "enable the Commission to verify that limited partners who are relieved from attribution will lack the ability to influence or control partnership affairs"); see also id. at 27446. Thus, the attribution guidelines as incorporated into Wilner & Scheiner support the view that the Commission intended to adopt a "potential control" standard.
 
 
 11
 Finally, the purpose of Sec. 310(b)(3) requires a potential control test. As the Commission reasoned on rehearing:
 
 
 12
 The mere fact that the alien has not been involved in the management or control of the partnership at the time the statements were written in no way substantiates that the alien cannot become involved in the management and control of the partnership.... [T]he limited partnership agreement certainly gives the alien the power to become so involved. Moreover, the general partner in his statement that the alien has not been involved stated further that there had been no formal meetings and no votes had been taken in which any limited partner participated. Therefore, the alien's lack of participation has little meaning. There have been no actions taken that he (or any other partner for that matter) could have influenced.
 
 
 13
 Sacramento RSA, 9 F.C.C.R. at 3185. If the Commission based its alien ownership test on actual control, applicants could evade the statutory bar by excluding alien partners from the partnership's business throughout the application process and later allowing them to exercise their power to influence and/or control the partnership. This would largely defeat the purpose of the alien ownership rule.[3]
 
 
 
 [1]
 The Commission has since largely abandoned the use of lotteries, in favor of a competitive bidding process. See Implementation of Sec. 309(j) of the Communications Act--Competitive Bidding, 9 F.C.C.R. 2348 (1994)
 
 
 [2]
 The relevant language from Wilner & Scheiner provides:
 [1.] The power of a limited partner to participate in the management and operations of the partnership depends, in large part, upon the terms of the limited partnership agreement. [2.] If a limited partnership interest in a particular business conveys powers comparable to those held by an officer or director of a corporation, the prohibitions of Section 310(b) relating to alien officers and directors extend to such interests. [3.] We recognize, however, that many limited partners do not possess this type of power. [4.] Although the licensee has the burden of proving that alien limited partners do not in fact substantially participate in the management or operations of the business, we will permit it flexibility in the manner in which it chooses to demonstrate this lack of participation. [5.] Moreover, we note that in the process of revising our attribution rules, we established certain guidelines designed to assure that limited partners who qualify for an exemption from attribution are effectively insulated from the management and operations of the partnership. Attribution Reconsideration Order, supra n. 35. [6.] Because compliance with the attribution criteria effectively insulates a limited partner from participating in the control of the partnership, alien limited partners who conform to these criteria will not be subject to the restrictions governing alien officers and directors.
 
 
 [103]
 F.C.C.2d at 520-21 n. 43 (emphasis added)
 
 
 [3]
 Sacramento's reliance on Bechtel v. FCC, 957 F.2d 873, 877-78 (D.C.Cir.1992), for the proposition that under the Commission's integration rules, the insulation of a limited partner is determined based on "actual, not nominal, patterns of control," is misplaced. The Commission's ownership integration rules, which are meant to ensure diversity of media ownership and control, aim to detect situations in which the nominal owner/manager purports to participate but does not in fact participate in the day-to-day affairs of the radio station. If the Commission did not focus on actual ownership and control, an applicant could create a "sham" management structure and claim 100% integration, despite the fact that the owner did not actually play a role in the station's management. In the context of the alien ownership prohibition, in contrast, the Commission has reasonably determined that its goal should be to protect against the potential for evasion of its rules, which applicants could achieve by avoiding active participation during the application process and allowing it afterward