**BIEDERMANN MOTECH GMBH and DePuy Spine, Inc., Plaintiffs**

v.

**ALPHATEC SPINE, INC., Defendant.**

**No. CIV.A.06–11111–EFH.**

United States District Court,
D. Massachusetts.

March 29, 2007.

Daniel P. Olohan, Nutter, McClennen & Fish, LLP, Boston, MA, Luke L. Dauchot, Kirkland & Ellis, LLP, Los Angeles, CA, Scott E Erlich, Nutter, McClennen & Fish, LLP, Boston, MA, Greer N. Shaw, Kirkland & Ellis LLP (CA), Los Angeles, CA, Calvin P. Griffith, Jones, Day, Reavis & Pogue, Isaac A. Molnar, Jones, Day, Reavis & Pogue, Patrick J. Norton, Jones Day, Cleveland, OH, for Biedermann Motech GmbH, Depuy Spine, Inc., Plaintiffs.

Dean G. Bostock, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Paul J. Hayes, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Robert R. Gilman, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Boston, MA, for Alphatec Spine, Inc., Defendant.

## MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

The Court responds to Defendant Alphatec Spine, Inc.'s ("Alphatec") motion for summary judgment of infringement and Plaintiffs Biedermann Motech GMBH's ("Biedermann") and DePuy Spine, Inc.'s ("DePuy Spine") cross-motion for partial summary judgment of infringement of U.S. Patent No. 5,207,678 ("the '678 patent"), entitled "Pedicle Screw And Receiver Member Therefore." Biedermann owns the '678 patent and DePuy Spine is the exclusive licensee of the '678 patent, which was issued on May 4, 1993. Alphatec is the manufacturer and distributor of (among others) the accused products, polyaxial pedicle screw systems, sold under the trade names of "Zodiac" and "Solanas." The Court has considered the parties' submissions on these motions and rules as follows:

The parties' motions require the Court to construe the term "hole" in claim 1 of the '678 patent. The '678 patent, which relates to implant devices used to align and support the spine, has one independent claim and six dependent claims. The invention of the '678 patent is polyaxial: it has a ball-and-socket joint that allows for flexibility in connecting the screw to the rod. Claim 1 of the '678 patent requires that the invention have "two holes for receiving a [metal] rod." The defendant argues that Alphatec's pedicle screws do not have two holes for receiving the rod but instead have U-shaped slits; its position is there can be no infringement of an invention which expressly requires holes because the terms are not synonymous. Here, the question at issue is whether "holes" is a general term that includes "slits."

The plaintiffs' position is that the term "holes for receiving a rod" should be con-

strued to mean "openings in the sides of the receiver for receiving a rod." Those openings need not be circumscribed (closed) according to the preferred embodiment in the specification of the patent-in-suit. The preferred embodiment, as seen in Figure 3 of the patent, shows holes open to the top of the receiver. (U.S. Patent No. 5,207,678 fig.3 (filed May 4, 1993)). To accept the defendant's proposition that the claim term "holes" requires a circumscribed opening would mean that the preferred embodiment shown in the patent lies outside the patent's claim language, which the Federal Circuit warns is "rarely, if ever, correct." *Vitronics Corp. v. Conceptronic, Inc.* 90 F.3d 1576, 1583 (Fed. Cir.1996).[1] No disclosed embodiment of the '678 patent features a receiver member with a closed hole. Rather, the example of the hole that receives the rod is a non-circumscribed opening—it is open to the top of the receiver, making "it easier to place the rod into the receiver." (Biedermann's Feb. 9, 2007 Opposition to Defendant's Motion for Summary Judgment of Non–Infringement, at 3) (hereinafter, "Biedermann Feb. 9 Memorandum").

The fact that broader independent claim 1 uses "holes" and narrower dependent claim 2 uses "slits" further resolves the question in favor of the plaintiffs. Indeed, if claim 1 prohibited slits, as the defendant argues, then claim 2 could not be dependent from it. *See, e.g., In re Abele*, 684 F.2d 902, 907 (Cust. & Pat.App.1982) (dependent claim includes all the limitations of the independent claim). Dependent claim 2 more narrowly specifies the features that receive the rod—they are "slits (12, 13)." This indicates that the term "holes" in broader claim 1 encompasses slits. Therefore, the Court defines the term "hole" to mean "an opening," and that term includes a U-shaped "slit."

▪ The defendant also contends that the prosecution history of the '678 patent demonstrates that any meaning for "holes" that encompasses a slit (or slot) was expressly disclaimed. (Alphatec's Jan. 12, 2007 Memorandum in Support of Summary Judgment of Non–Infringement, at 6–7). For example, original claim 3 included the phrase "two mutually opposite slits" for receiving the rod but that claim was rejected.[2] The defendant's argument is that during the prosecution of the patent the plaintiffs substituted original claims 1–8, which used the language of "slits," with claim 9 (issued claim 1), which for the first time uses the term "holes," and that such alleged substitution constitutes plaintiffs' subject matter disclaimer of the prior use of the term slits.

The Federal Circuit has cautioned against excessive reliance on prosecution history for claim construction purposes because the prosecution history "often lacks the clarity of the specification and this is

**1.** The defendant cites *Vitronics* to oppose an argument plaintiffs made in their brief that "common usage" of the term "holes" supports its proposed construction. Its argument is that according to *Vitronics*, extrinsic evidence may not be used to alter the meaning of the claims. *See*, 90 F.3d at 1583. However, in view of the clear intrinsic evidence in the present case—the claim language and specification—the Court does not rely on extrinsic evidence to construe the term.

**2.** The '678 patent application as originally filed on January 7, 1992 contained original claims 1–8. The applicants added claims 9–15 in a Preliminary Amendment filed in March 1992. In an Office Action dated April 13, 1992, the Examiner rejected original claims 1–8 but overlooked claims 9–15. In response to the Examiner's rejection, in October 1992, the applicants canceled original application claims 1–8 and resubmitted original claims 9–15, which ultimately became claims 1–7 of the issued patent. These claims were allowed without comment by the Examiner on October 30, 1992. (Biedermann Feb. 9 Memorandum, at 4).

less useful for claim construction purposes." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed.Cir.2005). The Federal Circuit requires that a prosecution history disclaimer of claim scope "must be both clear and unmistakable." *Sorensen v. ITC*, 427 F.3d 1375, 1379 (Fed.Cir.2005) (citation omitted). "This may occur, for example, when the patentee explicitly characterizes an aspect of his invention in a specific manner to overcome prior art." *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F.3d 1123, 1136 (Fed.Cir.2006).

Here, the prosecution history shows that plaintiff made no such waiver. The application leading to the '678 patent was originally filed in January 1992, with 8 claims. A few months later, in March 1992, a preliminary amendment was filed adding application claims 9–15 (Biedermann Feb. 9 Memorandum, at 4). This amendment was filed before the Examiner had issued any Office Action, and before the Examiner had rejected any claims. Application claims 9—15 had numerous wording differences compared to application claims 1—8, but were directed to the same subject matter. Application claims 9—15 were an additional claim set, not amendments to existing claims, and ultimately became claims 1–7 of the issued patent.

On May 1, 1992, the Examiner issued an Office Action, rejecting or objecting to application claims 1—8 based on certain references, and for other reasons; however, the Examiner overlooked application claims 9—15 at that time. In a later telephone interview, the Examiner indicated that he had found the preliminary amendment and would re-issue the Office Action to address application claims 9—15. (Alphatec Ex. F, at 4). When the Examiner did not re-issue the Office Action, the plaintiff resubmitted application claims 9—15 in an amendment, and they were allowed without comment by the Examiner. (Alphatec Exs. F and G). At no point

were application claims 9—15 ever narrowed or revised. There was never any argument or discussion concerning "holes" during this exchange, nor at any time in the prosecution history, nor is there any definition of the term set forth in the prosecution history.

The defendants assert that "[t]he prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed.Cir.), *cert denied*, 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995). In *Southwall*, the patentee distinguished over prior art by amending the claims *and* arguing that *a particular feature* in the claims distinguished over a two-step process disclosed in the prior art. *See id.* at 1576. The argument was made in response to the Examiner's inquiry into the scope of that particular claim feature. *Id.* Because of that argument, the Federal Circuit concluded that the patentee had "necessarily disclaimed coverage of a two-step process." *Id.*

■ In contrast, here, the term "holes" was at no time mentioned or discussed during prosecution of the '678 patent, was never argued as a point of distinction over any prior art, and it was not contended that any prior art lacked holes for receiving a rod. Indeed, application claim 9 containing the term "holes"—which issued without change as claim 1—was first submitted before any rejections were made. This conclusively establishes that the term was not intended to address any rejection. Moreover, the Examiner never indicated that "holes" was the basis for allowing any claims. "[T]he alleged disavowing statements [must] be both so clear as to show reasonable clarity and deliberateness, ... and so unmistakable as to be unambiguous evidence of disclaimer." *Harvest Tech.*

*Corp. v. Cytomedix, Inc.*, 2004 WL 2009253 at *5, 2004 U.S. Dist. LEXIS 18003 at *15 (D.Mass. Sept. 9, 2004) (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed.Cir.2003)). Here, no disavowing statements were made, so there is no way the prosecution history can be construed to rise to the "clear and unmistakable" level required for disclaimer. In short, the plaintiffs never disclaimed any subject matter with respect to "holes."

Thus, in addition to construing holes as openings which include U-shaped slits, the Court rules as a matter of law that the prosecution history of the '678 patent reflects that the plaintiff made no disclaimer of claim scope with respect to the term "holes."

SO ORDERED.